iLenEY,
This is a suit against R. S. Morse, as surviving and liquidating partner of the late firm of R. S. Morse & Co., for the recovery of a bill of ice, furnished for the City Hotel up to 16th April, 1863, and amounting to $1,252 10 with interest.
The answer is a general denial, and there is also a plea by which the defendant claims in reconvention from the plaintiff) $¿564 60 with interest.
The reconventional demand proceeds from certain agreements, between the parties, of the following tenor :
“ New Orleans, April 28th, 1859. ”
“ Having made a contract with R. S. Morse, and agreed to furnish him with all the ice he may require for the use of the City Hotel, Arcade Hotel, &c., at the rate of seventeen dollars and fifty cents per ton, eighty-seven and a half cents per hundred, for five years, from the 15th day of June, 1859, until 15th June, 1864, we agree hereby for a certain consideration in hand paid, to pay back or hand over to Mr. R. S. Morse, or his assigns, connected with him in the above-mentioned hotels, purchases of us, the same to be settled and paid over at the time the ice-bills are settled, or at the time Mr. Morse may require, leaving the net costs of his ice fifteen dollars per ton. ”
(Signed) “ S. B. Smith & Co.
Testimony of George Moore : “It may be asked by some friend why• We make the above deduction, and favor him over his neighbors ; because lie has favored us in former times, and in time of need, and we feel fully satisfied to get cost for our ice of such, but not so with others.”
(Signed) “ S. B, S.”
*221 “ New Orleans, October 31, 1861.”
“ We hereby mutually agree that the price to be paid for ice shall be temporarily raised to one dollar and fifty cents per one hundred pounds.The agreement to remain in force during the continuance of the blockade. It is further agreed, that the written contract is not in the. least impaired by said temporary agreement.”
(Signed) “S. B. Smith & Co.”
(Signed) “R. S. Mouse & Co:”
The account set up in reconvention, is thus stated : . '
“Messrs. S. B. Smith & Co., To R. S. Mouse, De.”
“For amount paid for ice furnished from May, 1861, to June, 1864, as per statement, etc................................ $3,908 60
Credit — By amount due on the above quantity of , iqe, if furnished by S. B. Smith, as per ice contract................. 1,343 99
Difference between the amount paid by R. S. Morse for ice, and the amount he was bound to pay under his contract with S. B. Smith & Co., to furnish ice at three-quarters of a cent per pound............................................... 2,564 61
The first question presented is, are the agreements which are transcribed above, legally binding upon the parties to them ; if so, they must be enforced. C. C. 1895, 1940, $ 1 and 2.
A careful perusal and due consideration of the two contracts,- of the. 28th April, 1859, and of 31st October, 1861, have satisfied us that the contract was always understood by the parties to it, as entered into between the proprietors of the ice depot, on the one part, and the proprietors-of the City and -Arcade Hotels, on the other part.
True, in the act of 28th April, 1859, the name only of R; S. IVTorse figures in the body of it, and it is not signed by him, and that his partner, George Moore, seems to have subscribed it as a witness; but all this is unimportant, as in the act of 31st October, 1861, wherein the price of the ice was temporarily augmented, $1 50 per “ during the continuance of the present blockade,”, it was mutually, specially and distinctly agreed that the contract of the 28th April, 1859, was not in the least impaired, by the temporary agreement of ike 81st October, 1861, and the parties to the original and supplemental agreements, themselves admit by signing the names of both firms, S. B. Smith & Co. and R. S. Morse & Co., to the’ last agreement, who the contracting parties really were throughout.
The first contract did not require the signature of Morse & Co. to it, to bind Smith & Co., as the acceptance of a contract need not be made by the same act, or in point of time, immediately after the proposition. C. 0.1798. A party need not accept a contract expressly, or by his signature. He does so, by availing himself of its stipulations. Hen. Dig. p. 1002, No. 16.
Several objections are urged by the plaintiff against the contract. The first objection is : That Morse is not bound by it, as he might at pleasure refuse to get ice from Smith, and Smith would' be without remedy ; as the contract only stipulates that Morse shall pay for such ice as he' may require from Smith; a certain price on delivery, and he might not have required any, and Smith would have no redress.
This involves the legal proposition, that there can be no contract-where *222 only one of the parties to it is bound ; but it has no application here; unless it be supposed that the contract contemplated that it was optional with Morse & Co;, to dispense entirely with the use of ice in their large hotels, which is not sanctioned by any reasonable construction that can fie placed upon the contract.
The obligation imposed on Morse & Co. by the contract, was, that all the ice that would necessarily be required for their hotels should be taken from Smith, & Co. at a stipulated price, which was regulated more than once between the parties, to adapt it to the state of the times. Had Morse & Co., purchased ice from other parties, it would have been a violation of their agreement with Smith & Co., who would have been legally entitled to redress for its infraction.
The second objection is, that Smith & Co. were excused from a compliance with the contract, by a fortuitous event, and irresistible force, the war.-
. This ,we deem wholly untenable, as we are satisfied that the agreement contemplated a state of war, and that the parties contracted with reference to its consequences.
The plaintiffs, however, were not prevented from furnishing ice under their contract during the period embraced in the bill sued on. The blockade was formally raised July 1st, 1862, and the plaintiffs sue for the value of ice furnished the defendant up to the 16th April, 1863; while, by their contract, they were to furnish it, and did furnish it, until the 15th June, 1864. From the 1st of July, 1862, to 15th June, 1864, there was no actual blockade.
The, third objection is, that the conduct of Morse amounted to a waiver of his claim to a performance of the contract.
It is said that after the blockade, Morse “purchased ice regularly from Smith at much higher rates than the contract called for, and when Yenard, Smith’s agent, raised the price of ice, and notified Morse, among other customers, Morse did not object.
What says Yenard on this point ?
“I.do not recollect,” he says, “that Morse & Oo. set up any claim or deinand that ice should be furnished them at a less price under any previous contract, when they were notified of the enhanced prices being charged them; but Morse, at one time during the period when I was collecting an account, said they had a contract with Smith & Co., but he knew Smith would make it all right when he saw him.” And he says that the first time he presented the account sued on, Morse claimed that he had a larger account against Smith & Co., on account of a contract fpr ice not being fulfilled; and again: “ Mr. Morse, I took for granted, from what he said, admitted the correctness of the account; he did not deny he owed the amount of the account, without reference to his books or book-keeper. His opposition to pay it grew out of the non-compliance with the' contract. He said he had a larger amount due him by Smith & Có. ”
From this testimony of Yenard, it is clear that Morse made no waiver of his claim, but asserted it.
It appears that from the 22d April, 1863, to 15th April, 1864, Morse & Co. paid witliout’objection, the various bills for ice furnished by J. F. Krantz *223 and Krantz and Smith, and it is contended by the plaintiffs, Smith & Oo., that the ice furnished under these names “ was in fact furnished by the house or firm of S. B. Smith & Co., represented during said Smith’s absence, by Krtm e S. B. Smith & Co., and Krantz and Smith, except á small quantity furnished by Warner, of all of which the defendant was well aware.”
We do not think the testimony in the record brings home knowledge of the identity of the houses of Krantz & Co., Krantz, Sandes & Co., with that of S. B. Smith & Co.
The last objection to the reconventional demand of Morse & Co. is, that Smith was never put in default.
It is not pretended by the plaintiffs, that ice was furnished Morse & Co. by any others than .themselves, carrying on business by different names; but really the identical S. B. Smith & Co., with whom Morse & Co. contracted. No default therefore was necessary, as the ice had been furnished by S. B. Smith & Co., and it became only necessary therefore to carry out the contract, which on the part of Smith & Oo. was to supply Morse & Co. with ice at a net cost of $15 per ton; and “to pay' back and hand over to him the excess above that price, which he might have paid, at any time he might require it.”
We think the defendant’s demand in reconvention is satisfactorily proved.
It is therefore ordered, adjudged and decreed, that the judgment Of the District Court be annulled, avoided and reversed. It is further ordered, adjudged and decreed, that judgment be and it is hereby rendered in favor of the defendant, E. S. Morse, as liquidating partner of E. S. Morse & Co., and against the plaintiff, S. B. Smith & Co., upon their' demand; and it is further ordered, adjudged and decreed, that jndgment be and it is hereby rendered in favor of E. S. Morse, as liquidating partner of E. S. Morse & Co., on his demand, in reconveniion and against S. B. Smith & Co., and the members of said firm, S. B. Smith and John1 E. Krantz, in solido, for the sum of two thousand five hundred and sixty-four dollars and sixty-one cents, with interest thereon, at the rate of five per cent, per annum, from the 15th June, 1861, till paid, and that the said plaintiffs pay costs of suit in both courts.